# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Thomas Talbert,**
**Petitioner Below, Petitioner**

**FILED**

**February 2, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)   No. 17-0273** (Cabell County 17-C-133)

**Lance Yardley, Warden,**
**Pruntytown Correctional Center,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Thomas Talbert, pro se, appeals the March 8, 2017, order of the Circuit Court of Cabell County denying his instant petition for a writ of habeas corpus. Respondent Lance Yardley, Warden, Pruntytown Correctional Center,[1] by counsel Gordon L. Mowen, II, filed a response in support of the circuit court's order. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner has multiple convictions for driving under the influence ("DUI"), third offense. The most recent conviction occurred in 2006. At trial, Sergeant J.E. Combs of the Huntington Police Department ("police department") testified that he and Corporal K.A. Lake responded to a report of a motor vehicle accident that occurred at approximately 8:30 p.m. on September 10, 2005. Sergeant Combs explained that, because the 911 dispatcher had to call back with the correct location, the officers arrived at the scene approximately fifteen to twenty minutes after the accident was reported. Once at the scene, a witness identified petitioner as the driver of a Ford pickup truck ("truck") that was parked on the side of the street. When petitioner attempted to pull out into the street, his truck rear-ended a Ford Expedition ("Expedition") that was parked in front of it. Sergeant Combs observed that the truck was "nose up against" the Expedition and "askew with

---

[1]Pursuant to Rule 41(c) of the Rules of Appellate Procedure, we have substituted the respondent party's name with Warden Lance Yardley because petitioner is currently incarcerated at Pruntytown Correctional Center.

1

[its] rear[-]end out in the—on 8th Avenue." Sergeant Combs further testified that, while Corporal Lake initially inspected the vehicles for damage, he approached petitioner who was staggering near the truck. Petitioner had bloodshot eyes, exhibited slurred speech, and "reeked of alcohol." Sergeant Combs was unable to administer field sobriety tests because petitioner was "staggering and falling all over the place." Consequently, Sergeant Combs testified that he arrested petitioner and took him to the police station for processing. Meanwhile, a third officer, Sergeant D.M. Underwood, arrived at the scene to do the crash report on the two vehicles.

During cross-examination, petitioner's trial attorney asked Sergeant Combs whether petitioner informed him that petitioner was not the driver of the truck. Sergeant Combs answered, "No, sir." Sergeant Combs explained that he did not have an extended conversation with petitioner because his slurred speech "was very hard to understand." Following Sergeant Combs's testimony, the State called the witness who identified petitioner as the driver of the truck. The witness confirmed her identification of petitioner. The jury convicted petitioner of DUI, third offense.

Given petitioner's prior felony convictions,[2] the State filed a recidivist information against petitioner pursuant to the West Virginia habitual criminal statute, West Virginia Code §§ 61-11-18 and 61-11-19. Following a second trial, a separate jury convicted petitioner of being a habitual criminal. Consequently, the circuit court sentenced petitioner to a life term of incarceration with the possibility of parole. Petitioner subsequently challenged the legality of his recidivist life sentence in a motion for correction of illegal sentence pursuant to Rule 35(a) of the West Virginia Rules of Criminal Procedure. The circuit court denied the Rule 35(a) motion by order entered on July 6, 2010. In *State v. Talbert* ("*Talbert I*"), No. 101502 (W.Va. April 18, 2011) (memorandum decision), this Court affirmed the circuit court's July 6, 2010, order.

In 2007, petitioner filed a petition for a writ of habeas corpus in the circuit court. The habeas proceeding was protracted with several attorneys being appointed to represent petitioner and two hearings being held on his petition. By order entered on June 14, 2012, the circuit court denied petitioner's habeas petition. Petitioner appealed the circuit court's June 14, 2012, order in *Talbert v. Ballard* ("*Talbert II*"), No. 12-0798, 2013 WL 3242783 (W.Va. June 28, 2013) (memorandum decision). In affirming the denial of habeas relief, this Court rejected petitioner's contention that a third hearing should be held on the petition, finding that there was "no reason for another hearing before the circuit court." *Id.* at *1.

On February 28, 2017, petitioner filed the instant petition for a writ of habeas corpus in the circuit court based on newly discovered evidence. According to the petition, in January and February of 2017, the City of Huntington responded to Freedom of Information Act requests by sending petitioner the various police reports filed by Sergeant Combs, Corporal Lake, and

---

[2]West Virginia Code § 17C-5-2 provides that DUI, third offense, is a felony. Currently, this statutory provision is set forth at West Virginia Code § 17C-5-2(m), whereas in the version of the statute in effect in 2006, this provision was set forth at West Virginia Code § 17C-5-2(k).

Sergeant Underwood in his criminal case. Petitioner contended that these reports were inconsistent with each other. Consequently, petitioner argues that the police reports were exculpatory in nature and provided impeachment material. By order entered on March 8, 2017, the circuit court rejected petitioner's contention that the State suppressed the reports in his criminal case, finding that "[a]ll of those arrest reports were made available through the discovery process." Accordingly, the circuit court denied the petition.

Petitioner now appeals the circuit court's March 8, 2017, order denying his instant habeas petition. We apply the following standard of review in habeas appeals:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *Anstey v. Ballard*, 237 W.Va. 411, 787 S.E.2d 864 (2016). "A prior omnibus habeas corpus hearing is *res judicata* as to all matters raised and as to all matters known or which with reasonable diligence could have been known; however, an applicant may still petition the court on the following grounds: . . . newly discovered evidence . . . ." Syl. Pt. 4, in part, *Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981).

On appeal, petitioner contends that the police reports he obtained in 2017 were suppressed by the State. Respondent counters that the circuit court properly rejected petitioner's contention that the State suppressed the police reports. We agree with respondent. In syllabus point 2 of *State v. Youngblood*, 221 W.Va. 20, 650 S.E.2d 119 (2007), we held as follows:

> There are three components of a constitutional due process violation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982): (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial.

Petitioner concedes that his trial attorneys filed a motion for production of discovery and that the State responded by filing an answer. In that answer, the State noted that the police department may have "documents, which might be material to the defense and may be used by the State as evidence in chief at trial or was obtained from [petitioner,] which items you may view by contacting [Sergeant] Combs." Accordingly, we conclude that the circuit court did not err in finding that the police reports "were made available through the discovery process" and in rejecting petitioner's contention that the reports were suppressed by the State.

We further agree with respondent that the police reports were not exculpatory and/or

impeachment evidence. Petitioner contends that different reports list different officers as the arresting officer. However, Sergeant Combs testified at trial that both he and Corporal Lake responded to the scene. Moreover, which officer was the arresting officer rather than the assisting officer does not determine petitioner's guilt or innocence. Contrary to petitioner's contentions, the record reflects that Sergeant Combs testified that he arrested petitioner and, during cross-examination, answered "no" in response to a question by petitioner's trial attorney regarding whether petitioner denied being the driver. Sergeant Combs explained that he did not have an extended conversation with petitioner because his slurred speech "was very hard to understand." We find that Corporal Lake's report was consistent with Sergeant Combs's testimony in that Corporal Lake observed that petitioner exhibited slurred speech and was so impaired that "[h]e could not follow instructions to perform [the] field sobriety tests."

Petitioner further contends that the police reports were exculpatory and/or impeachment evidence because the accident occurred approximately a block away from where Sergeant Combs testified that it occurred. However, the reports of each of the three officers state that the accident occurred at approximately 21st Street and 8th Avenue, which is consistent with Sergeant Combs's testimony.[3] Therefore, because the alleged newly discovered evidence was neither suppressed nor exculpatory/impeachment evidence, we find that petitioner's claim is without merit.

Petitioner argues that his claim of newly discovered evidence should not be rejected without an evidentiary hearing. However, given our ruling herein that the claim lacks merit, we find no need for an additional evidentiary hearing. As reflected in our decision in *Talbert II*, there is "no reason for another hearing before the circuit court." 2013 WL 3242783, at *1. Therefore, we conclude that the circuit court did not err in denying petitioner's instant habeas petition.

For the foregoing reasons, we affirm the circuit court's March 8, 2017, order denying petitioner's instant petition for a writ of habeas corpus.

Affirmed.

**ISSUED:** February 2, 2018

---

[3]To the extent that petitioner contends that the three officers listed the wrong accident location based on the location from which his truck was towed away, we reject any such contention. As respondent notes, petitioner's truck likely had to be moved prior to the tow truck's arrival given Sergeant Combs' testimony that petitioner's truck was partially in the street. Moreover, petitioner's contention regarding the accident location is not based on any alleged newly discovered evidence. Rather, the contention is based on a letter petitioner received from the towing company, dated August 1, 2006. Therefore, if petitioner wanted to raise this issue, he should have done so during his first habeas proceeding.

4

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

5